**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| DEBORAH DEVENY and JENNIFER FLANNERY, individually and on behalf of all similarly situated persons,<br><br>        Plaintiffs,<br><br>v.<br><br>LOVE BUGS PET SITTING, CASSANDRA SMREKAR, individually, and MEGAN SMREKAR WILLIAMS, individually.<br><br>        Defendants. | **CIVIL ACTION NO.:**<br>_____<br><br>**JURY TRIAL DEMANDED** |

## COLLECTIVE ACTION COMPLAINT

Plaintiffs Deborah Deveny and Jennifer Flannery, individually and on behalf of all similarly situated persons, file this Complaint against Love Bugs Pet Sitting, and its co-owners Cassandra Smrekar, individually, and Megan Smrekar Williams, individually, and allege as follows:

## INTRODUCTION AND NATURE OF THE ACTION

1.     This action is brought as a collective action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 207 and 216(b), to recover unpaid minimum and overtime wages and tips owed to Plaintiff and all similarly situated persons who are presently or were formerly employed as pet sitters for Love Bugs Pet Sitting. In

violation of the FLSA and as a regular and routine practice, Defendants intentionally misclassified pet sitters as independent contractors even though they were employees of the company, and willfully failed to pay Plaintiffs and similarly situated persons minimum and overtime wages for all hours worked. Additionally, Defendants unlawfully withheld tips from Plaintiffs and other pet sitters, thereby further violating the FLSA, and constituting a tort of deprivation of possession in violation of O.G.C.A. §§ 51-10-1 and 51-10-6.

2.     This action challenges Defendants' misclassification of Plaintiffs and similarly situated pet sitters as independent contractors rather than employees. Plaintiffs brings this action on behalf of herself and similarly situated pet sitters who worked for Defendants but were classified as independent contractors.

3.     During the three-year period preceding the filing of this action and continuing to the present (the "Collective Action Period"), Plaintiffs and similarly situated pet sitters who opt into this action pursuant to the FLSA, 29 U.S.C. § 216(b) (the "Collective Action"), allege that they are entitled to recover minimum wages, overtime wages, tips, liquidated damages, interest, and reasonable attorneys' fees and costs.

## JURISDICTION AND VENUE

5.     Jurisdiction of this Court is invoked pursuant to the FLSA, 29 U.S.C.

§216(b), and 28 U.S.C. §§ 1331 and 1337.

6.    This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

7.    Pursuant to 28 U.S.C. § 1391 and Local Rule 3.1(B), venue is proper in this Court because the unlawful employment practices described herein were committed within the Atlanta Division of the Northern District of Georgia.

8.    This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

9.    Plaintiff Deborah Deveny ("Deveny") is a citizen of the United States and a resident of the State of Georgia.

10.    Plaintiff Deveny consents to be a party to this action pursuant to 29 U.S.C. § 216(b). A consent to join form is attached as Exhibit A.

11.    Plaintiff Jennifer Flannery ("Flannery") is a citizen of the United States and a resident of the State of Georgia.

12.    Plaintiff Flannery consents to be a party to this action pursuant to 29 U.S.C. § 216(b). A consent to join form is attached as Exhibit B.

13.    During the Collective Action Period, Deveny and Flannery were employees of Defendants within the meaning of the FLSA, but were misclassified

as independent contractors. During their employment with Defendants, they were not paid minimum wages or overtime wages for the hours they worked in a workweek, and they were also denied tips that they earned and which clients paid for their services as pet sitters.

14.    Defendant Love Bugs Pet Sitting ("Love Bugs") is a Georgia-based company with its principal place of business located at Marietta, Georgia.  Love Bugs may be served with process by delivering a copy of a summons and this complaint to Cassandra Smrekar at 430 Monroe Way NW, Kennesaw, Georgia 30144.

15.    Defendant Cassandra Smrekar and Defendant Megan Smrekar Williams, (collectively referred to as "the Smrekars") are co-owners of Love Bugs and may be served with process by delivering a copy of a summons and this Complaint at at their respective homes. Megan Smrekar Williams may be served at her home located at 1027 Riverbend Club Drive, Atlanta, Georgia 30339. Cassandra Smrekar may be served at her home located at 430 Monroe Way NW, Kennesaw, Georgia 30144.

16.    At all times material to this Complaint, the Smrekars have managed and/or operated Love Bugs as co-owners, have regularly exercised the authority to hire and fire employees, determined the work schedules of employees, set the pay

rate of employees, and controlled the finances and operations of Love Bugs.  By virtue of such control and authority, the Smrekars are employers of Plaintiffs and other similarly situated employees as defined by the FLSA, 29 U.S.C. § 203(d).

17.    At present and during the Collective Action Period, Defendants were an enterprise covered by the FLSA, and as defined by 29 U.S.C. §§ 203(r) and (s).

18.    During the Collective Action Period, Defendants were employers as defined by 29 U.S.C. § 203(d).

19.    Defendants' annual gross volume of sales made or business done is not less than $500,000.00 for each year in the Collective Action Period.

20.    At all relevant times, Defendants have been, and continue to be, "employer[s]" engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 201 *et seq*.

21.    At all relevant times, in the course of Defendants' business operations, Defendants' employees, including Plaintiffs, have handled or otherwise used materials that have been moved or produced in interstate commerce.

22.    At all relevant times, Defendants have had two or more "employees engaged in commerce or in the production of goods for commerce," as defined in 29 U.S.C. § 203(s)(1)(A)(i).

23.    At all relevant times, Defendants have had two or more "employees

handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person," as defined in 29 U.S.C. § 203(s)(1)(A)(i).

## STATEMENT OF FACTS

24.     Plaintiffs re-allege and incorporate by reference the preceding paragraphs.

25.     Defendant Love Bugs is a professional pet sitting company.

26.     Defendant Love Bugs provides an array of services for their clients, including pet sitting, dog walking, cat sitting, overnight care, acting as a pet taxi, communicating with out-of-town clients about pet wellbeing, and other customized care for pets' needs.

27.     The Smrekar Defendants jointly own Love Bugs and control its day-to-day operations.

28.     During the Collective Action Period, Defendants employed Plaintiffs as pet sitters, whose job duties included checking on pets, feeding pets, giving medication to pets, dog walking, overnight care, acting as a pet taxi for medical treatment and other needs, communicating with out-of-town (and often out-of-state) clients, providing updates relating to the pets, and other customized care for pets' needs.

29.     Plaintiff Deveny worked for Defendants as a pet sitter from approximately December 16, 2021 through April 19, 2022.

30.     Plaintiff Flannery worked for Defendants from approximately October 2021 through February 2022.

31.     Defendants directed Plaintiffs and similarly situated pet sitters to perform services for Love Bugs.

32.     Defendants assigned all of the work that Plaintiffs and Collective Action members performed, and/or have been aware of such work.

33.     Defendants required Plaintiffs to use an application on their cell phones called Precise Pet Care, which is professional software for pet sitters.

34.     Precise Pet Care provided GPS check-ins and permitted Defendants to track pet sitters' compliance with scheduling and work performance through their day and had GPS check-ins.

35.     Defendants provided Plaintiffs and similarly situated pet sitters their assignments for each day through Precise Pet Care, and allotted a specific amount of time to complete the required task.

36.     Through Precise Pet Care, Defendants also directed Plaintiffs to each job site and scheduled the time slot that Plaintiffs and similarly situated pet sitters visited each job site.

37.     Pursuant to its centralized, company-wide policy, pattern and/or practice, Defendants classified Plaintiffs and Collective Action members as independent contractors who were exempt from the minimum wage and overtime wage provisions of the FLSA.

38.     Defendants avoided any obligation to pay payroll taxes, workers' compensation insurance, health insurance, unemployment insurance, overtime, and other such benefits, as a result of classifying Plaintiffs and Collective Action members as independent contractors.

39.     During the Collective Action Period, Defendants paid Plaintiffs and Collective Action members a piece rate salary in exchange for each pet sitting job or overnight job completed. Thus, their wages were based on the amount of jobs completed, and the type of jobs completed, and not the amount of hours worked, nor the time spent traveling to job sites, regardless of how many hours they worked per workweek.

40.     Plaintiffs and Collective Action members were not compensated for any time spent traveling between job sites.

41.     During the Collective Action Period, Defendants exerted significant control over performance of work by Plaintiffs, including, but not limited to, the following:

a.  Defendants provided Plaintiffs with a daily schedule detailing each job that they needed to complete, the location of the job, the services to be provided, and the time frame in which they were allotted to complete each job;

b.  Defendants controlled what days Plaintiffs were scheduled to work, the amounts charged to clients for the work, and the pay to Plaintiffs;

c.  Defendants dictated the location that Plaintiffs were assigned to work, and the time slot in which they were required to complete job assignments;

d.  Plaintiffs had to perform their job pursuant to Defendants' policies and procedures, including, for example, inputting information into Precise Pet Care, completing a journal at the end of every visit, taking pictures at the job site, and consenting to GPS tracking through the Precise Pet Care application;

e.  Defendants required that Plaintiffs input notes into Precise Pet Care regarding the work they performed;

f.  Defendants required that Plaintiffs log the miles they drove between job sites, even though they did not pay Plaintiffs for the time spent driving between those job sites; and

g. Defendants required Plaintiffs to be available to communicate with out-of-state clients about pet well-being while the clients were on vacation: communication about pet well-being with out-of-state clients was a mandatory and important aspect of each pet sitters' job.

42.   During the Collective Action Period, Defendants also controlled Plaintiffs in the following ways:

a. Plaintiffs could not negotiate the amount they were paid by Defendants;

b. Plaintiffs could not determine their schedule or the order of job sites that they visited; and

c. Defendants dictated the price it would charge the customers, and Plaintiffs could not bill the customer for work they performed, or perform any additional work for the customer.

43.   Defendants similarly withheld earned tips which clients paid as a gratuity to Plaintiffs' and Collective Action Members.

44.   Collective Action members were similarly situated with Plaintiffs relating to the control, work duties, and obligations imposed by Defendants on Plaintiffs set forth in the preceding two paragraphs.

45.   The work performed by Plaintiffs and Collective Action members required little skill and minimal capital investment.  Plaintiffs and Collective Action

members did not possess any specialized skill before they worked for Defendants and were provided with training regarding how to perform the assigned duties.

46.     During the Collective Action Period, the work that Plaintiffs and Collective Action members performed for Defendants was an integral part of their business.   Defendants received the majority of their revenue from the work performed by Plaintiffs and other similarly situated pet sitters.

47.     During the Collective Action Period, Defendants failed to make, keep, and preserve records of work hours of Plaintiffs and Collective Action members, pursuant to the FLSA.

48.     Upon information and belief, Defendants did not perform an analysis of Plaintiffs and Collective Action members' job duties when making the decision to classify them as independent contractors.

49.     As part of its regular business practice, Defendants intentionally, willfully, and repeatedly engaged in a policy, pattern, and/or practice of violating the FLSA a with respect to Plaintiffs and Collective Action members.  This policy and pattern or practice includes, but it is not limited to:

      a.  willfully misclassifying Plaintiffs and Collective Action members as independent contractors;

      b.  willfully failing to pay Plaintiffs and Collective Action members

minimum wages; and

    c.  willfully withholding tips from Plaintiffs and Collective Action members.

## **COLLECTIVE ACTION ALLEGATIONS**

50.   Plaintiffs seek to represent the following two groups of similarly situated persons pursuant to 29 U.S.C. § 216(b):

> All persons who were, or are, hired by Defendants as pet sitters – or performing materially similar work as pet sitters – at any time within three years prior to the filing of the original Collective Action Complaint and who did not receive minimum wage, overtime compensation, or tips required by the FLSA.

51.   Plaintiffs will fairly and adequately protect the interests of the Collective Action members, and have retained counsel who are experienced and competent in the fields of wage and hour law and collective action litigation.

52.   Questions of law and fact common to the Collective Action members predominate over questions that may affect only individual members because Defendants have acted on grounds generally applicable to all Collective Action members.

53.   Plaintiffs and the Collective Action members are all victims of the

Defendants' common policy and / or plan to violate the FLSA by (1) failing to pay all earned wages; (2) misclassifying Plaintiffs and the Collective Action members as exempt from minimum wage and overtime wages; and (3) withholding tips.

54.    Pursuant to 29 U.S.C. § 216(b), Plaintiffs seeks to prosecute their FLSA claims as a collective action on behalf of all pet sitters who are or were formerly employed by Defendants as pet sitters throughout the United States during the Collective Action Period.

55.    Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs and the Collective Action members.

56.    There are many similarly situated pet sitters employed by Defendants who have been underpaid in violation of the FLSA and who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join this lawsuit.  Thus, it is proper that Notice is sent to the Collective pursuant to 29 U.S.C. § 216(b).

57.    The similarly situated pet sitters are known to Defendants, are readily identifiable, and can be located through Defendants' records.

58.    A collective action is superior to other available methods for the fair and efficient adjudication of this FLSA controversy.  Plaintiffs and the Collective Action members lack the financial resources to adequately prosecute separate

lawsuits against Defendants. A collective action will also prevent unduly duplicative litigation resulting from inconsistent judgments pertaining to the Defendants' policies.

## FIRST CAUSE OF ACTION AGAINST DEFENDANTS:
### FLSA MINIMUM WAGE COMPENSATION
**(On Behalf of Plaintiffs and All Collective Action Members)**

59.    Plaintiffs, on behalf of themselves and the Collective Action members, re-allege and incorporate by reference all prior paragraphs as if they were set forth again herein.

60.    At all relevant times and continuing to the present time, Defendants' piece rate compensation system did not fully compensate Plaintiffs and the Collective Action members by failing to pay them the applicable minimum wages for all their hours worked as required by Section 206 of the FLSA.

61.    Defendants' misclassification of Plaintiffs and the Collective Action members as independent contractors, and Defendants' failure to pay them in accordance with the FLSA, was in willful disregard of the minimum wage compensation requirements of the FLSA.

62.    Defendants' failure to perform a person-by-person analysis of Plaintiffs and the Collective Action members' job duties to ensure that they were properly classified as independent contractors, and its failure to compensate them for off the

clock work, was a willful violation of the FLSA intended to reduce labor costs. Defendants knew and/or showed reckless disregard for the matter of whether its conduct was prohibited by the Act. 29 U.S.C. § 255(a).

63.   As a result of Defendants' FLSA violations, Defendants are liable to Plaintiffs and the Collective Action members for minimum wage compensation in an amount to be determined at trial, plus liquidated damages in the amount equal to the amount of unpaid wages, interest, attorneys' fees and costs.

**SECOND CAUSE OF ACTION AGAINST DEFENDANTS**
**FLSA OVERTIME COMPENSATION**
**(Brought on Behalf of Plaintiffs and All Collective Action Members)**

64.   Plaintiffs, on behalf of themselves and all of the Collective Action members, re-allege and incorporate by reference all prior paragraphs as if they were set forth again herein.

65.   At all relevant times and continuing to the present time, Defendants' piece rate compensation system did not fully compensate Plaintiff and the Collective Action members for all their hours worked for Defendants in excess of forty (40) hours per workweek as required by Section 207 of the FLSA.

66.   Plaintiffs and the Collective Action members were victims of a policy and plan by Defendants to classify them as independent contractors and to deny them overtime compensation required by the FLSA.

67.     Defendants' misclassification of Plaintiff and the Collective Action members as independent contractors, and its failure to pay them in accordance with the FLSA, was in willful disregard of the overtime compensation requirements of the FLSA.

68.     Defendants' failure to perform an analysis of Plaintiffs and the Collective Action members' job duties to ensure that they were properly classified as independent contractors, and its failure to compensate them for travel time and off the clock work, was a willful violation of the FLSA intended to save labor costs. Defendants knew and/or showed reckless disregard for the matter of whether its conduct was prohibited by the Act.  29 U.S.C. § 255(a).

69.     As a result of Defendants' FLSA violations, Defendants are liable to Plaintiffs and the Collective Action members for unpaid overtime compensation in an amount to be determined at trial, plus liquidated damages in the amount equal to the amount of unpaid wages, interest, attorneys' fees and costs.

**THIRD CAUSE OF ACTION AGAINST DEFENDANTS:**
**TIP THEFT IN VIOLATION OF THE FLSA**
**(Brought on Behalf of Plaintiffs and All Collective Action Members)**

70.     Plaintiffs reassert and incorporate by reference all preceding paragraphs of this Complaint.

71.     At all relevant times, the Smrekar Defendants asserted control of Love

Bug's day-to-day operations, and made the decisions regarding the amount that Plaintiffs and other pet sitters would be compensated, including the decision to withhold tips from Plaintiffs and other pet sitters, and is therefore an employer within the meaning of the FLSA.

72.     The tipped wage provisions set forth in the FLSA apply to Defendants and protect Plaintiff and other members of the FLSA Collective.

73.     The FLSA forbids employers, such as Defendants, from keeping tips from its employees, such as Plaintiff and other pet sitters.

74.     Defendants engaged in a routine and widespread pattern, policy, and practice of violating the FLSA by withholding earned tips from its employees.

75.     Plaintiff seeks to represent the Withheld Tips Collective as described above.

76.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 203(m)(2)(B). Because Defendants' violations of the FLSA were willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

77.     Defendants did not make a good-faith effort to comply with the FLSA with respect to their compensation of Plaintiffs and other pet sitters.

78.     Due to Defendants' FLSA violations, Plaintiffs and other members of

the Withheld Tips Collective are entitled to recover from Defendants all such tips unlawfully withheld, an additional and equal amount as liquidated damages, interest, and reasonable attorneys' fees and costs of litigation.

### FOURTH CAUSE OF ACTION AGAINST DEFENDANTS
### CONVERSION (O.C.G.A. § 51-10-1)
### (Individual Claims Asserted by Plaintiffs)

79.     Plaintiffs reassert and incorporate all of the preceding paragraphs of this Complaint.

80.     The tips and gratuities paid by Defendants' clients to Plaintiffs were personally owned by Plaintiffs.

81.     Defendants wrongfully converted and retained Plaintiffs' tips and gratuities in violation of O.C.G.A. § 51-10-1.

82.     Plaintiffs have a legal right to all tips unlawfully withheld from them by Defendants.

83.     Defendants have no legal right to or claim to the tips they illegally withheld from Plaintiffs.

84.     Defendants acted willfully and/or maliciously in withholding tips from Plaintiffs while she was employed by Defendants.

85.     As a result of this deprivation of possession, Plaintiffs were harmed in the amount of tips unlawfully withheld, to be determined following a full review of

Defendants' records.

86.     Plaintiffs are entitled to recover compensatory damages, including any other loss sustained as a result of the willful deprivation of property and the cost of maintaining the civil action.

### FIFTH CAUSE OF ACTION AGAINST DEFENDANTS
### MONEY HAD AND RECEIVED
**(Individual Claims Asserted by Plaintiffs against Defendants)**

87.     Plaintiffs reassert and incorporate all of the preceding paragraphs of this Complaint.

88.     Defendants received money from Defendants' clients that in equity and good conscience they should not be permitted to keep.

89.     Plaintiffs have demanded for repayment of the tips.

90.     Defendants have refused Plaintiffs' demand for the tips.

91.     Plaintiffs were harmed in the amount of tips unlawfully withheld, to be determined following a full review of Love Bugs' records.

92.     Plaintiffs are entitled to recover compensatory damages, including any other loss sustained as a result of the willful deprivation of the tips and the cost of maintaining the civil action.

**SIXTH CAUSE OF ACTION AGAINST DEFENDANTS**
**EXPENSES OF LITIGATION PURSUANT TO O.C.G.A § 13-6-11**
**(Individual Claim Asserted by Plaintiffs Against Defendant Love Bugs)**

93.     Plaintiffs reasserts and incorporates by reference all preceding paragraphs of this Complaint.

94.     Defendant's tortious conduct as described herein was in bad faith and caused Plaintiffs unnecessary trouble and expense.

95.     Pursuant to O.C.G.A. § 13-6-11, Defendant Love Bugs is liable for Plaintiffs expenses of litigation with respect to their deprivation of possession claim, including reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the Collective Action members, demand a **TRIAL BY JURY** and seek the following relief:

a.      Designation of this action as an FLSA collective action on behalf of Plaintiffs and the Collective Action members, and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated Collective Action members, apprising them of the pendency of this action and permitting them to assert their FLSA claims in this action through individual consents to sue pursuant to 29 U.S.C. § 216(b), and tolling of the statute of limitations;

b.      A declaratory judgment that the practices complained of herein are

unlawful under the FLSA;

      c.      A finding that Defendants' violations of the FLSA were willful;

      d.      An award of unpaid minimum wages due under the FLSA to Plaintiffs and the Collective Action Members;

      e.      An award of liquidated damages as a result of Defendants' failure to pay minimum wages to Plaintiffs and the Collective Action Members;

      f.      An award of unpaid overtime wages due under the FLSA to Plaintiffs and the Collective Action Members;

      g.      An award of liquidated damages as a result of Defendants' failure to pay overtime wages to Plaintiffs and the Collective Action Members;

      h.      An award in the amount of the unlawfully withheld tips in violation of the FLSA to Plaintiffs and the Collective Action Members;

      i.      An award of liquidated damages as a result of Defendants' unlawful withholding of tips to Plaintiffs and the Collective Action Members;

      j.      With respect to Plaintiffs' state law claims, an award in the total amount of unlawfully withheld tips;

      k.      An award of compensatory damages to Plaintiffs as a result of the state law claims;

      l.      An award of pre-judgment and post-judgment interest;

m.    An award of costs and expenses of this action, including reasonable attorneys' fees and expert fees.

n.    Other relief as this Court shall deem just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by this Amended Complaint.

Respectfully submitted this 23rd day of May, 2022.

*/s/Rachel Berlin Benjamin*
Rachel Berlin Benjamin
Georgia Bar No. 707419
rachel@hallandlampros.com
Brian J. Sutherland
Georgie Bar No. 105408
brian@hallandlampros.com
HALL & LAMPROS, LLP
400 Galleria Parkway, Suite 1100
Atlanta, Georgia 30339
Telephone:  (404) 876-8100
Facsimile:  (404) 876-3477

*Attorneys for Plaintiffs and Collective*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1D of the Local Rules for the United States District Court for the Northern District of Georgia, I hereby certify that the foregoing has been prepared in Times New Roman, 14 point font, as required by Local Rule 5.1.

Respectfully submitted,

*/s/ Rachel Berlin Benjamin*